IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| JOSE A. MORENO | ) | |
| | ) | |
| Plaintiff, | ) | Case No.: |
| | ) | |
| v. | ) | |
| | ) | Judge: |
| TRANS UNION, LLC | ) | |
| | ) | |
| Defendant. | ) | |

**COMPLAINT**
**(Jury Demand Endorsed Herein)**

1. This is an action for actual, statutory and punitive damages brought by Plaintiff, Jose A. Moreno ("Plaintiff" or "Mr. Moreno"), against Defendant, Trans Union, LLC, for negligent and willful violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.*, as more fully described herein.

## PARTIES

2. Mr. Moreno is an adult individual who is and was, at all times relevant hereto, a resident of Marsing, St. Charles County, Idaho. Plaintiff is a "consumer" as defined by Section 1681*a*(c) of the FCRA.

3. Defendant, Trans Union, LLC ("Trans Union"), is a Delaware corporation doing business throughout the country and in the State of Idaho. Trans Union is a "consumer reporting agency" as defined by Section 1681*a*(f) of the FCRA.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction over this matter pursuant to 15 U.S.C. §§ 1681*p* and 28 U.S.C. § 1337. Venue in this judicial district is proper because Mr. Moreno

resides in this judicial district and many of the facts relevant to this Complaint occurred in this judicial district.

## INTRODUCTION

5. The computerization of our society has resulted in a revolutionary increase in the accumulation and processing of data concerning individual citizens. Data technology, whether it is used by businesses, banks, the Internal Revenue Service or other institutions, allows information concerning individuals to flow immediately to requesting parties. Such timely information is intended to lead to faster and better decision-making by its recipients, and all of society should benefit from the resulting convenience and efficiency.

6. Unfortunately, however, this information has also become readily available for, and subject to, mishandling and misuse. Individuals can sustain substantial damage, both emotionally and economically, whenever inaccurate or fraudulent information is disseminated about them.

7. The ongoing technological advances in the area of data processing have resulted in a boon for the companies that accumulate and sell data concerning individuals' credit histories and other personal information. Such companies are commonly known as consumer reporting agencies ("CRAs").

8. These CRAs sell to readily paying subscribers (i.e., retailers, landlords, lenders, potential employers and similar interested parties) information commonly called "consumer reports," concerning individuals who may be applying for retail credit, to lease an apartment, to obtain a mortgage or employment or the like.

9. Since 1970, when Congress enacted the FCRA, federal law has required CRAs to have in place and to utilize reasonable procedures "to assure maximum possible accuracy" of the

personal and financial information that they compile and sell about individual consumers. The FCRA sets forth this and many other requirements, not only for CRAs' operations, but also for the furnishers of information as well.

## BACKGROUND INFORMATION

10. A "mixed file" is a credit report in which some or all of the information contained therein pertains to a person (or persons) other than the person who is the subject of the report.

11. Trans Union knows and understands what a mixed file is.

12. On October 26, 1992, Trans Union entered into a Consent Order with numerous States' Attorneys General to settle charges stemming from Trans Union's failure to insure that the credit reports they compile were of maximum possible accuracy. *See State of Alabama, et al. v. Trans Union Corporation*, unreported, Civil Action No 92-C-7101 (Judge James B. Zagel), N.D. Ill., October 26, 1992.

13. The State of Idaho was one of the States whose Attorney General instituted this action on behalf of its citizens against Trans Union.

14. The goal of the Consent Order "was to avoid the occurrence of mixed files, which are files that erroneously contain information from more than one consumer." *Bentley v. Providian Financial Corp.*, unreported, 2003 WL 22234700, S.D.N.Y., April 21, 2003.

15. Despite the Consent Order and its mandates, consumers have been forced to sue Trans Union dozens of times in state and/or federal courts related to mixed file problems since 1992.

## FACTUAL ALLEGATIONS

16. Plaintiff's name is Jose Antonio Moreno. Plaintiff has never been known by any other name than "Jose Antonio Moreno" or "Jose Antonio Moreno Calderon" which stems from

Plaintiff's Mexican decent (Plaintiff's mother's maiden name, Calderon, may be applied to the end of his father's last name, Moreno, in accordance with Mexican cultural tradition).

17.     Plaintiff takes great pride in his good name and credit record, and works very hard to ensure that his bills are paid in full and on time every month.  Plaintiff believes and understands that his credit rating with all of his creditors is excellent.

18.     Despite the foregoing, Plaintiff's Trans Union credit report continues to paint a different picture.

19.     Over the last few years, Plaintiff has endured negative treatment from various lenders and creditors in the form of credit denials, credit limit decreases, and higher interest rates on approved credit.  Plaintiff was told on at least one of these occasions that the adverse decision was based on a negative credit history reported by Trans Union.  Plaintiff was confused by this negative treatment as he understood his credit history to be pristine.

20.     In or around November 2010, Plaintiff employed the services of a realtor to assist him in finding a home and securing a mortgage as Plaintiff desired to move out of his parents' home.  After reviewing Plaintiff's credit history, the realtor informed Plaintiff that he would not be able to finance a home because of certain derogatory items appearing on his credit.

21.     As Plaintiff believed and understood that he had no negative credit history, he conducted a routine check of his credit through www.annualcreditreport.com, a website established to give consumers access to a free credit report through each of the three (3) national CRAs.

22.     Plaintiff discovered that his Trans Union credit report contained false and highly negative information that did not belong to Plaintiff.  Specifically, Plaintiff's credit report represented: (1) a public record entry indicating a tax lien had been filed against him by the

4

Idaho Secretary of State in 2008 (hereinafter referred to as the "public record tax lien"); (2) an outstanding collection account held by NCO Financial; and (3) two individual credit card accounts wrongly being reported as thirty (30) days past due.

23. Plaintiff immediately disputed the erroneous information. Specifically, by letter dated January 31, 2011, Trans Union was notified, in writing (sent by certified mail), that the aforementioned pieces of information were incorrect and should be removed from Plaintiff's credit report. *See* Dispute Letter dated January 31, 2011 (a copy of which is attached hereto as Exhibit 1).

24. Plaintiff's dispute specifically advised Trans Union that the public record tax lien belonged to Plaintiff's father, not Plaintiff.

25. Trans Union responded to Plaintiff's dispute by providing its investigation results, dated February 18, 2011. *See* Investigation Results and Credit Report dated February 18, 2011, from Trans Union to Mr. Moreno (a copy of which is attached hereto as Exhibit 2). This communication represented that Trans Union "investigated" each of the pieces of information disputed by Plaintiff and, while the false NCO Financial collection account was deleted, the public record tax lien entry was allegedly "verified" by Trans Union, and it would stay on Plaintiff's credit report. Likewise, the two incorrect credit card accounts continued to report mistakenly that Plaintiff was 30 days past due.

26. Plaintiff again notified Trans Union to dispute the false reportings. Plaintiff again advised Trans Union, in writing, that the public record tax lien appearing on *his* credit report belonged to his father, not him. Plaintiff also requested Trans Union to identify who it "verified" the false information with so that he could follow up with them directly. *See* Dispute Letter dated March 18, 2011 (a copy of which is attached hereto as Exhibit 3).

27. Trans Union responded to Plaintiff's second dispute with a letter dated March 31, 2011. Trans Union indicated that the two credit card accounts had been previously "verified as accurate," Trans Union thus deems those additional disputes of that information "frivolous," and so, Trans Union will not reinvestigate the items again unless Plaintiff provides additional information. *See* Letter from Trans Union to Mr. Moreno, dated March 31, 2011 (a copy of which is attached hereto as Exhibit 4).

28. Notably, Trans Union's March 31, 2011, letter offered no response to Plaintiff's dispute or request for identification of the source of the alleged verification of the public record tax lien.

29. A few days later, Trans Union sent its "investigation results" to Plaintiff, once again showing the public record tax lien "verified, no change." *See* Investigation Results and Credit Report dated April 4, 2011 (a copy of which is attached hereto as Exhibit 5). No other information about the alleged "verification" was provided, and the false entry remained on Plaintiff's credit report.

30. In April 2011, Plaintiff challenged Trans Union's determination that his credit card account disputes were "frivolous." *See* Dispute Letter dated April 12, 2011 (a copy of which is attached hereto as Exhibit 6). Trans Union ultimately updated the two false entries accordingly. *See* Investigation Results and Credit Report dated May 17, 2011 (a copy of which is attached hereto as Exhibit 7).

31. Without explanation, the identification on Plaintiff's credit report changed from "Jose Antonio Moreno" to "Jose A. MorenoCalderon" in this latest disclosure from Trans Union. *E.g.*, Compare Exhibits 6 and 7.

32. In June 2011, Plaintiff attempted to return Trans Union's attention to the fact that the paid tax lien entry was still improperly appearing on his credit report. *See, e.g.*, Dispute Letter dated June 8, 2011 (a copy of which is attached hereto as Exhibit 8). Trans Union was reminded that this entry properly belongs to Plaintiff's father, not Plaintiff.

33. Plaintiff received no response from this June 2011 dispute.

34. In August 2011, Plaintiff tried disputing the false public record tax lien again. *See* Dispute Letter dated August 5, 2011 (a copy of which is attached hereto as Exhibit 9). Again, Trans Union was told that the tax lien belonged to Plaintiff's father, not Plaintiff.

35. Trans Union was also provided a copy of the actual public record information showing Plaintiff's father's full name, Jose Antonio Moreno Garcia, not Plaintiff. *See* Notice of Idaho State Lien Amendment, dated June 26, 2009 (a copy of which is attached hereto as Exhibit 10). The document confirms that Plaintiff's father, not Plaintiff, is the individual against whom the tax lien was filed and subsequently released.

36. Trans Union continued to ignore Plaintiff's disputes and efforts to provide additional information. While representing that "new information" was included with the public record tax lien, Trans Union provided Plaintiff with a credit report that continued to report the tax lien as belonging to Plaintiff. *See* Investigation Results and Credit Report, dated September 12, 2011, from Trans Union to Mr. Moreno (a copy of which is attached hereto as Exhibit 11).

37. Trans Union's refusal to reinvestigate the disputed information resulted in considerable stress, anxiety and extreme frustration for Plaintiff. Plaintiff was confused and aggravated by Trans Union's flippant response to his original dispute, and its subsequent refusal to even consider the possibility that its original "investigation" was wrong, left Plaintiff utterly frustrated and angered.

38. With little understanding as to what else he could do, Plaintiff disputed the false information yet again with Trans Union. *See*, *e.g.*, Dispute Letters dated September 28, 2011 and October 5, 2011 (copies of which are attached hereto as Exhibits 12 and 13 respectively), in hopes that his repeated pleas for help would get someone's attention at Trans Union.

39. In response, Trans Union sent another letter purporting to be "Investigation Results" indicating that "new information" was included with respect to the public record lien. However, this "new information" involved Trans Union inexplicably editing the public record tax lien entry's removal date from "05/2016" to "05/2019." *See* Investigation Results and Credit Report, dated October 13, 2011, from Trans Union to Mr. Moreno (a copy of which is attached hereto as Exhibit 14).

40. In other words, instead of deleting the known false information, Trans Union not only chose to retain the information, but also affirmatively *extended* the amount of time this entry would damage Plaintiff's credit rating.

41. Trans Union's action in this regard violates the obsolescence period mandated by the FCRA, which prohibits Trans Union from reporting a paid tax lien for more than seven years, *see* 15 U.S.C. § 1681*c*(a)(3), and smacks of intentional retaliation against Plaintiff for repeatedly disputing the false entry.

42. Trans Union sent additional "Investigation Results" dated October 15, 2011, which claimed to have "verified" the public record tax lien again. *See* Investigation Results and Credit Report dated October 25, 2011 (a copy of which is attached hereto as Exhibit 15). Trans Union once again changed the personal identification information on Plaintiff's credit report, now listing him as "Jose Antonio Moreno Calderon." *Id.*

43. As a direct result of Trans Union's refusal to remove objectively false information from Plaintiff's credit report and, in fact, extending the "life" of this adverse information, Plaintiff has continued to experience negative credit treatment from creditors in 2011 and 2012. Although he was qualified for a mortgage with Wells Fargo in 2011, he was not approved for enough money and the interest rate was too high to move forward with it. Plaintiff presently remains living at his parents' home.

44. Plaintiff is at a complete loss as to what else he can do to convince Trans Union that its records are wrong.

45. Plaintiff is demoralized that he cannot secure a house of his own, a car of his own, and other credit he has applied for, not due to any mistakes of his own, but because Trans Union simply refuses to report accurate information about Plaintiff.

46. Plaintiff is left to question how and why *he* is supposed to prove that the tax lien that was filed against his father is not his, and why Trans Union is allowed to get away with skirting its obligations under federal law to report only accurate information about him.

47. The entire experience has imposed upon Plaintiff significant distrust, frustration and distress, and has rendered Plaintiff hopeless as to his ability to regain the good name and credit rating that he has worked hard to earn.

48. Absent litigation, Plaintiff does not believe that his credit record will ever be accurate. Thus, the instant lawsuit is being commenced.

## COUNT ONE
## VIOLATIONS OF THE FAIR CREDIT REPORTING ACT

49. Plaintiff hereby incorporates by reference all well-pleaded allegations contained in the preceding paragraphs as if fully rewritten herein.

50. A "consumer reporting agency" is defined in 15 U.S.C. § 1681*a*(f) as follows:

"[A]ny person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports."

51. Trans Union is a consumer reporting agency as defined by Section 1681*a*(f) of the FCRA.

52. Section 1681*n* of the FCRA imposes civil liability on any CRA "who willfully fails to comply with any requirement" of the Act. *See* 15 U.S.C. § 1681*n*(a).

53. Section 1681*o* of the FCRA provides for civil liability against any CRA that is negligent in failing to comply with any requirement imposed under the Act.

### Trans Union's Failure To Adopt And/Or Follow Reasonable Procedures

54. The FCRA mandates that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." *See* 15 U.S.C. § 1681*e*(b).

55. In addition to the mandates of the FCRA, Trans Union has expressly agreed to "[i]mplement or continue to utilize and maintain reasonable procedures to avoid the occurrence or reoccurrence of Mixed Files." *See* Consent Order, *supra*, at ¶ G, 1.

56. On numerous occasions in the past two (2) years, Trans Union has prepared a consumer report concerning Mr. Moreno, and disseminated such report to one or more third party(s), that failed to assure "maximum possible accuracy" of information pertaining to Plaintiff.

57. The consumer report(s) prepared by Trans Union concerning Mr. Moreno contained inaccurate information, including, but not limited to: 1) a public record entry

indicating a tax lien had been filed against *him* by the Idaho Secretary of State in 2008 and released in June 2009; and 2) a removal date of "5/2019" associated with the public record tax lien trade line, in violation of 15 U.S.C. § 1681*c*(a)(3).

58.     Trans Union willfully and/or negligently failed to follow reasonable procedures to assure maximum possible accuracy of the consumer reports it prepared and/or published concerning Mr. Moreno in violation of 15 U.S.C. § 1681*e*(b).

59.     As a direct and proximate result of Trans Union's willful and/or negligent refusal to follow reasonable procedures as mandated by the FCRA, Mr. Moreno has suffered loss and damage including, but not limited to: financial loss, loss of credit opportunity, a justifiable fear to request credit, expenditure of time and resources, mental anguish, humiliation, and embarrassment, entitling him to an award of actual damages in amounts to be proved at trial, plus attorneys' fees together with the costs of this action pursuant to 15 U.S.C. § 1681*o*.

60.     Trans Union's continued refusal to follow reasonable procedures as mandated by the FCRA reveals a conscious disregard of the rights of Plaintiff.  The injuries suffered by Mr. Moreno are attended by circumstances of fraud, malice, retaliation, and willful and wanton misconduct, calling for statutory damages, an assessment of punitive damages, plus attorneys' fees and costs pursuant 15 U.S.C. § 1681*n*.

61.     Upon information and belief, Trans Union's editing of the removal date for the public record tax lien entry to "05/2019" following Mr. Moreno's September and October 2011, disputes was an act done in retaliation against Plaintiff for exercising his rights under the FCRA. Such conduct entitles Mr. Moreno to an award of punitive damages in an amount to be determined at trial.

**Trans Union's Failure to Conduct Reasonable Reinvestigations**

62. The FCRA mandates that a CRA conduct an investigation of the accuracy of information "[i]f the completeness or accuracy of any item of information contained in a consumer's file" is disputed by the consumer. *See* 15 U.S.C. § 1681*i*(a)(1). The Act imposes a 30-day time limitation for the completing of such an investigation. *Id.*

63. The FCRA provides that if a CRA conducts an investigation of disputed information and confirms that the information is, in fact, inaccurate, or is unable to verify the accuracy of the disputed information, the CRA is required to delete that item of information from the consumer's file. *See* 15 U.S.C. § 1681*i*(a)(5)(A).

**(Reinvestigation Violations 1, 2 and 3)**

64. In January 2011, Mr. Moreno wrote to Trans Union and requested that they delete specific items in his credit file that did not belong to him, namely a public record tax lien and an NCO collection account that were not his, and two credit card accounts that were incorrectly being shown as 30-days past due.

65. With respect to the public record tax lien, Plaintiff specifically advised Trans Union that "[t]here has been a mistake ... this account is NOT mine, it is my father's." *See* Exhibit 1.

66. By January 2011, Trans Union had been on notice for twenty (20) years that mixed files were a common problem within the credit reporting industry, causing consumers considerable harm and angst. Nevertheless, upon information and belief, Trans Union failed to identify Plaintiff's dispute as involving a mixed file.

67. With respect to the public record tax lien and both credit card accounts, Trans Union's alleged "reinvestigation" failed to update false information.

68. By failing to conduct a reasonable investigation into Plaintiff's disputes in this regard, Trans Union willfully and/or negligently violated 15 U.S.C. § 1681*i*(a)(1) with respect to each and every failed dispute.

**(Reinvestigation Violations 4, 5 and 6)**

69. On March 31, 2011, Mr. Moreno wrote to Trans Union to again dispute the false public record tax lien and credit card information appearing in his credit report, and in addition, to request the name, address, and phone number of the vendor responsible for the alleged "verification" of said entries.

70. With respect to the public record tax lien, Trans Union claims to have "verified" such false information as belonging to Plaintiff once again.

71. Trans Union did either such a shoddy investigation of Plaintiff's dispute so as to continue to confirm the false information, or no real investigation was actually done. In either instance, Trans Union's conduct constitutes a willful and/or negligent violation of 15 U.S.C. § 1681*i*(a)(1).

72. Trans Union also failed to provide Plaintiff the requested identifying information as to the verifying vendor of the public record tax lien.

73. With respect to Plaintiff's disputes as to the two (2) credit card accounts, Trans Union admittedly conducted ***no*** investigation whatsoever having wrongly deemed such disputes "frivolous." *See* Exhibit 4. As confirmed by Trans Union subsequent deletion of this same information, *see* Exhibit 7, Trans Union's determination in this regard was not "reasonable" as required by 15 U.S.C. § 1681i(a)(3)(A). As such, Trans Union willfully and/or negligently violated 15 U.S.C. § 1681*i*(a)(1) by failing to conduct any reinvestigation of the two separate credit card account disputes.

**(Reinvestigation Violation 7)**

74. By letter dated June 8, 2011, Plaintiff disputed the public record tax lien wrongly appearing on his credit report. *See* Exhibit 8.

75. Trans Union failed to provide any response to Plaintiff within thirty (30) days of receipt of this dispute or, in fact, ever.

76. By failing to conduct a reasonable investigation into Plaintiff's June 2011, dispute, Trans Union willfully and/or negligently violated 15 U.S.C. § 1681*i*(a)(1).

**(Reinvestigation Violation 8)**

77. By letter dated August 5, 2011, Plaintiff disputed the public record tax lien wrongly appearing on his credit report. *See* Exhibit 9.

78. Trans Union did either such a shoddy investigation of Plaintiff's dispute so as to continue to confirm the false information, or no real investigation was actually done. In either instance, Trans Union's conduct constitutes a willful and/or negligent violation of 15 U.S.C. § 1681*i*(a)(1).

79. By failing to conduct a reasonable investigation into Plaintiff's August 2011, dispute, Trans Union willfully and/or negligently violated 15 U.S.C. § 1681*i*(a)(1).

**(Reinvestigation Violation 9)**

80. By letter dated September 28, 2011, Plaintiff disputed the public record tax lien wrongly appearing on his credit report. *See* Exhibit 12.

81. Trans Union did either such a shoddy investigation of Plaintiff's dispute so as to continue to confirm the false information, or no real investigation was actually done. In either instance, Trans Union's conduct constitutes a willful and/or negligent violation of 15 U.S.C. § 1681*i*(a)(1).

82. At the same time, Trans Union affirmatively updated the false information to extend the amount of time this derogatory but false information would stay on Plaintiff's credit report, thereby causing additional credit damage to Plaintiff by creating the false impression that this negative information will remain on Plaintiff's credit report for three (3) additional years. Upon information and belief, this caused an additional decrease in Plaintiff's credit score. See Exhibit 14.

83. By failing to conduct a reasonable investigation into Plaintiff's September 2011, dispute, Trans Union willfully and/or negligently violated 15 U.S.C. § 1681$i$(a)(1).

84. Trans Union's affirmative extension of the amount of time the false information would remain on Plaintiff's credit report as its only response to Plaintiff's September 2011 dispute constitutes a willful violation of Trans Union's reinvestigation obligations.

**(Reinvestigation Violation 10)**

85. By letter dated October 5, 2011, Plaintiff disputed the public record tax lien wrongly appearing on his credit report. *See* Exhibit 13.

86. Trans Union did either such a shoddy investigation of Plaintiff's dispute so as to continue to confirm the false information, or no real investigation was actually done. In either instance, Trans Union's conduct constitutes a willful and/or negligent violation of 15 U.S.C. § 1681$i$(a)(1).

87. By failing to conduct a reasonable investigation into Plaintiff's October 2011, dispute, Trans Union willfully and/or negligently violated 15 U.S.C. § 1681$i$(a)(1).

88. As a direct and proximate result of Trans Union's repeated disregard for each and every one of Plaintiff's disputes as outlined above, Plaintiff has suffered a significant loss of trust in the credit reporting system and its accountability to the average consumer such as himself.

89. As a direct and proximate result of Trans Union's willful and/or negligent refusal to conduct reasonable investigations as mandated by the FCRA as outlined above, Plaintiff has suffered loss and damage including, but not limited to: financial loss, loss of credit opportunity, a justifiable fear to request credit, expenditure of time and resources, mental anguish, humiliation and embarrassment, entitling him to an award of actual damages in amounts to be proved at trial, plus attorneys' fees together with the costs of this action pursuant to 15 U.S.C. § 1681*o*.

90. Trans Union's pattern of refusal to correct patently false information as mandated by the FCRA reveals a conscious disregard of the rights of Plaintiff. The injuries suffered by Mr. Moreno are attended by circumstances of fraud, malice, retaliation, and willful and wanton misconduct, calling for statutory damages, an assessment of punitive damages, plus attorneys' fees and costs pursuant 15 U.S.C. § 1681*n*.

WHEREFORE, Plaintiff, Jose A. Moreno, prays for judgment in his favor and against Defendant, Trans Union LLC, and for the following relief:

A. An award of actual damages in such amounts as determined by the jury;

B. Statutory damages pursuant to 15 U.S.C. § 1681*n*;

C. An assessment of punitive damages against Defendant pursuant to 15 U.S.C. § 1681*n*;

D. Costs and reasonable attorney's fees pursuant to 15 U.S.C. § 1681*n* and 15 U.S.C. § 1681*o*; and

E. Such other and further relief as may be just and proper.

Dated this 19th day of January, 2013.        Respectfully Submitted,

  /s/ *Ryan T. Earl*
Ryan T. Earl (Idaho Bar #8342)
EARL & EARL, PLLC
212 10th Avenue South
Nampa, Idaho  83651
Telephone: (208) 890-0355
Facsimile: (208) 461-9560
Email: ryantearl@earlandearllegal.com

Sylvia A. Goldsmith (Ohio # 0064871)
Geoff B. McCarrell (Ohio # 0086427)
LAW OFFICE OF SYLVIA A. GOLDSMITH
Milano Law Building
2639 Wooster Road
Rocky River, OH 44116
Telephone: (440) 934-3025
Facsimile: (440) 934-3026
Email: sgoldsmith@sgoldsmithlawoffice.com
Email: gmccarrell@sgoldsmithlawoffice.com

*Attorneys for Plaintiff*

## JURY DEMAND

Plaintiff respectfully demands a trial by jury on all issues so triable in this lawsuit.

Dated this 19th day of January, 2013.

  /s/ *Ryan T. Earl*
Ryan T. Earl (Idaho Bar #8342)
EARL & EARL, PLLC

*Attorney for Plaintiff*